IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**Northern Division**

| | | |
|---|---|---|
| PSEG RENEWABLE TRANSMISSION LLC, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | | Case No. 1:25-cv-02296-ABA |
| | * | |
| ALVI PROPERTIES, LLC, *et al.*, | * | |
| | * | |
| Respondents. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**PETITIONER PSEG RENEWABLE TRANSMISSION LLC'S MOTION TO HOLD RESPONDENT JAMES G. AVERILL IN CONTEMPT OF COURT**</u>

Petitioner PSEG Renewable Transmission LLC ("Petitioner" or the "Company") respectfully moves this Court to hold Respondent James G. Averill in civil contempt of court for failure to comply with this Court's Preliminary Injunction (ECF 160).

This Court ordered that the Company "be permitted to enter onto the properties of Respondents and to remain on the property to the extent reasonably necessary to make surveys, run lines or levels, or obtain information relating to the acquisition and future use of the properties in connection with the Maryland Piedmont Reliability Project." (ECF 160.) The Preliminary Injunction requires the Company to provide Respondents not less than 24 hours' notice of PSEG's entry. (*Id.*) It also requires all Respondents to comply with the relevant requirements from the date of the orders "until PSEG's application for a Certification of Public Convenience and Necessity . . . is granted or denied." (*Id.*)

Respondent James G. Averill has failed to comply with the Preliminary Injunction. When the Company's agents traveled to Mr. Averill's property to provide the paper notice of entry

required by the Preliminary Injunction, Mr. Averill told the agents that they would not be permitted to enter the property, threw the paper notice onto the ground, and told the agents to shove the paper notice up their "ass." (**Exhibit 1**, Declaration of William "Clay" Spradlin ("Spradlin Decl."), ¶ 10.) The Company's immediately retreated and informed their supervisors that they had been denied access to the property. (*Id.* ¶ 11.) Without the ability to enter Mr. Averill's property and perform these surveys, the Company runs the risk of experiencing the harm that the Preliminary Injunction was fashioned to prevent.

Given this violation of the Court's order, the threats made to the Company's agents, and the continuing harm to the Company as a result, this Court should exercise its "inherent power to enforce compliance with [its] lawful order[] through civil contempt." *FTC v. Pukke*, 53 F.4th 80, 102 (4th Cir. 2022) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)); *see also Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 618 (4th Cir. 2018) ("[A] single violation of [an order] is sufficient to support a finding of contempt.").

## BACKGROUND

On October 15, 2025, the Company's land agents traveled to Mr. Averill's property, located at 12610 Jesse Smith Road in Mount Airy, Maryland, to post a paper notice of entry on the front door of the residence located at the property, consistent with the terms of the Preliminary Injunction. (Ex. 1 ¶ 3). The land agents observed a sign on the property that showed "PSEG" with a red line through it. (*Id.* ¶ 4.)

Mr. Averill was in his garage when the agents arrived. (*Id.* ¶ 5.) The land agents observed that Mr. Averill was holding an object in his hands resembling a tray or a picture frame. (*Id.*) A land agent approached Mr. Averill with the paper notice, and Mr. Averill directed him to place the notice on this object. (*Id.* ¶¶ 6-7.) The land agent did so and advised Mr. Averill that they were

present on his property to deliver notice of the Company's entry to conduct surveys. (*Id.* ¶¶ 7-8.) The land agent also asked Mr. Averill if he would like a phone call before the surveys began. (*Id.*) Mr. Averill replied, "They're not going to start." (*Id.*) He asked the land agent if he was with "PSEG," and the land agent replied affirmatively. (*Id.* ¶ 9.) Mr. Averill responded, "Did you not see the sign?" (*Id.*) Mr. Averill then told the agents, "Get the fuck off my property." (*Id.* ¶ 10.) He tossed the paper notice of entry onto the ground and told the land agent, "Take your notice and shove it up your ass." (*Id.*) The land agents left the property immediately to avoid any further escalation. (*Id.* ¶ 11.)

## ARGUMENT

A finding of civil contempt requires the movant to show four elements: (1) "the existence of a valid decree of which alleged contemnor had actual or constructive knowledge;" (2) "a showing that the decree was in the movant's 'favor;'" (3) "a showing that the alleged contemnor, by its conduct, violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violation;" and (4) "a showing that the movant suffered harm as a result." *Columbia Gas Transmission Corp. v. Mangione Enters.*, 964 F. Supp. 199, 202 (D. Md. 1996); *see also Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 461 (4th Cir. 2020). The movant must show these elements by clear and convincing evidence, and willfulness is not a necessary element. *Columbia Gas*, 964 F. Supp. at 202-03. Once this showing is made, "the burden shifts to the defendant to show good faith in making all reasonable efforts to comply with the enforcement order." *Klopp*, 957 F.3d at 461 (citation omitted). Here, all four factors are met, and sanctions are appropriate.

### A. Mr. Averill Has Actual or Constructive Knowledge of the Preliminary Injunction.

The Preliminary Injunction was a valid decree. *See, e.g.*, *Enovative Techs., LLC v. Leor*, 86 F. Supp. 3d 445, 446 (D. Md. 2015) (finding defendant in civil contempt for violating preliminary injunction). Mr. Averill has actual knowledge of the Preliminary Injunction. The Company, through counsel, sent a copy of the Preliminary Injunction to Mr. Averill by FedEx on September 12, 2025 to his residence at 12610 Jesse Smith Road in Mount Airy, Maryland (the same address where the Company's land agents spoke to Mr. Averill on October 15, 2025). (*See* **Exhibit 2**, Declaration of Emily Wilson ("Wilson Decl."), ¶ 4.) The Preliminary Injunction was delivered to that address on September 15, 2025. (*Id.* (citing Ex. B).)

### B. The Preliminary Injunction Is in The Company's Favor.

There can be no dispute that the Preliminary Injunction, requested by and granted to the Company, is in the Company's favor. The Court granted the Company access to properties, including Mr. Averill's, to conduct limited surveys upon finding that the Company was likely to suffer irreparable harm in the absence of such access. (ECF 156 (granting the Company's motion for preliminary injunction "for the reasons explained in the Court's June 20, 2025 memorandum opinion in PSEG 1"); *PSEG Renewable Transmission LLC v. Arentz Family, LP*, 788 F. Supp. 3d 705, 739 (D. Md. 2025). The Court agreed with the Company that "it likely will suffer substantial monetary harm from anticipated future financial losses (such as loss of revenue) as a result of the delay" in the absence of a preliminary injunction. *PSEG Renewable Transmission LLC*, 899 F. Supp. 3d at 739. This requirement is easily met.

### C. Mr. Averill Has Actual or Constructive Knowledge of his Violation of the Preliminary Injunction.

The Preliminary Injunction's requirement that the Company be permitted entry was "clear and unequivocal." *In re GMC*, 61 F.3d 256, 259 (4th Cir. 1995). Subject to the requirement that

the Company provide the requisite notice, Mr. Averill is required to permit the Company entry onto his property to conduct limited surveys. The Company provided the requisite notice, but Mr. Averill rejected the notice and stated that the Company will not be permitted to enter his property.

The Preliminary Injunction requires the Company "be permitted to enter onto the properties of Respondents" and remain there to conduct its surveys so long as the Company provides the requisite notice. (ECF 160.) Thus, Mr. Averill is required to receive the Company's notice of entry and permit the Company access to his property at the time identified by the Company. *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network*, 2013 WL 2444132, at *3 (D. Md. June 4, 2013) (noting that "[a] district court is justified in adjudging a person to be in civil contempt for failure to be reasonably diligent and energetic in attempting to accomplish what was ordered." (quoting *Happy Sumo Sushi, Inc. v. Yapona, Inc.*, 2008 WL 4526103 at *1 (D. Utah Oct. 3, 2008))), *report and recommendation adopted*, 2013 WL 3967934 (D. Md. July 31, 2013); *SEC v. SBM Inv. Certificates, Inc.*, 2012 U.S. Dist. LEXIS 28175, at *28-29 (D. Md. Mar. 2, 2012) (noting constructive knowledge of violation of order will suffice, and given plain language of order, "a person exercising 'reasonable care and diligence'" would have been aware that actions violated order (citation omitted)). Given the plain language of the Preliminary Injunction that requires Mr. Averill to "permit[]" the Company "to enter" and "remain" on his property, Mr. Averill has actual or constructive notice that his refusal to accept the paper notice of entry or permit the Company's agents on his property is a violation of the Preliminary Injunction.

**D.  The Company Continues to be Harmed by Mr. Averill's Refusal to Permit Entry.**

As explained above, this Court found that the Company is likely to suffer irreparable harm if it is not granted access to Mr. Averill's property (and others) to conduct limited surveys. (ECF 156 (granting the Company's motion for preliminary injunction "for the reasons explained in the

5

Court's June 20, 2025 memorandum opinion in PSEG 1")); *PSEG Renewable Transmission LLC*, 788 F. Supp. 3d at 739. As to this instance specifically, Mr. Averill's actions are blocking the Company from safely completing any survey on his property—exactly the harm the Preliminary Injunction was designed to avoid.

### E. Sanctions are warranted to compensate the Company for losses sustained as a result of Mr. Averill's failure to abide by the Amended Preliminary Injunction.

Remedies for civil contempt are intended to "be remedial and compensatory," and this Court has "broad discretion" to determine the appropriate remedy. *In re GMC*, 61 F.3d at 259; *see also Klopp*, 957 F.3d at 461 ("Civil contempt orders—and the appropriate consequences for violating them—fall to the district court's discretion."). Remedies may include "ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." *Id.* In addition to being compensatory, sanctions may also be "incentivizing." *Klopp*, 957 F.3d at 466. Damages in a contempt finding "must only meet the preponderance of the evidence standard." *Talaria Co., LLC v. Duplessie*, 2025 WL 1545350, at *2 (D. Md. Apr. 25, 2025) (quoting *Schwartz v. Rent-A-Wreck of Am.*, 261 F. Supp. 3d 607, 617 (D. Md. 2017). No sanction can make up for the Company's lost time here, but reasonable attorney's fees are appropriate.

"The Court determines the reasonableness of attorneys' fees using 'the principles of the traditional lodestar method as a guide.'" *Hernandez v. Villa Bldg. Grp., LLC*, 2024 WL 3161574, at *3 (D. Md. June 25, 2024). Under this method, the "amount is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate." *Id.* The hourly rate "is reasonable if it 'is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quoting *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 412 (D. Md. 2014). Appendix B to the Local Rules for the District Court

of Maryland provides rules and guidelines for determining attorney's fees in certain cases "although . . . higher rates can be reasonable." *Id.* Factors to be considered in determining the reasonableness of attorneys' fees include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (quoting *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)).

Here, due to Mr. Averill's conduct, the Company has been forced to expend attorney's fees in connection with preparing and filing the instant Motion. The Company requests this Court to find Mr. Averill in contempt and order the Company to produce proof of its reasonable attorney's fees incurred in support of this motion. Further, the Company requests this Court to impose a civil fine in an amount this Court deems appropriate to compel compliance with its order.

## CONCLUSION

For the foregoing reasons, the Company respectfully requests that the Court hold Mr. Averill in civil contempt and enter an order that requires Mr. Averill to comply with the Preliminary Injunction (ECF 160), requires Mr. Averill to pay the Company's reasonable attorney's fees, and imposes civil fines and other remedies that this Court deems just and equitable.

Date: October 24, 2025                                     Respectfully submitted,

*/s/ Kurt J. Fischer*
Kurt J. Fischer (Bar No. 03300)
Venable LLP
210 W. Pennsylvania Avenue
Suite 500
Towson, MD 21204
(410) 494-6200
kjfischer@venable.com

J. Joseph Curran III (Bar No. 22710)
Christopher S. Gunderson (Bar No. 27323)
Kenneth L. Thompson (Bar No. 03630)
Susan R. Schipper (Bar No. 19640)
Emily J. Wilson (Bar No. 20780)
Venable LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
(410) 244-7400
jcurran@venable.com
csgunderson@venable.com
klthompson@venable.com
srschipper@venable.com
ejwilson@venable.com

*Attorneys for Petitioner PSEG Renewable Transmission LLC*

**CERTIFICATE OF SERVICE**

I hereby certify on this 24th day of October, 2025, I electronically filed the foregoing with the Court by using the CM/ECF system.  There is currently no counsel of record for Mr. Averill. I certify that I will serve the foregoing on Mr. Averill.

        /s/ *Emily J. Wilson*
    Emily J. Wilson